**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:05cr559 |
| | ) | |
| RYAN DOUGLAS JENNINGS, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

In this prosecution and conviction for abusive sexual contact with a minor in violation of 18 U.S.C. § 2244(a)(3), defendant's post-verdict motion for a new trial presents the novel question whether to establish this offense the government must prove beyond a reasonable doubt that defendant knew the victim (i) had not attained the age of 16; and (ii) was four years younger than the defendant. Put differently, the novel question presented is whether § 2244(a)(3)'s explicit incorporation of the offense defined in § 2243(a) necessarily includes or excludes subsections (c) and (d) of § 2243, which further define and elucidate the offense described in subsection (a).

### I.

The salient facts are derived from the trial record and may be succinctly stated.[1] On December 19, 2005, defendant Jennings was a passenger on United Airlines Flight 77, an

---

[1] Where, as here, a jury convicts a defendant, it is appropriate on a post-verdict motion to state the evidence in the manner most favorable to the government. *See, e.g.*, *United States v. Campbell*, 977 F.2d 854, 856 (4th Cir. 1992) (holding, in context of post-verdict motion for acquittal, that verdict must be upheld if any rational trier of fact could have found defendant guilty based on evidence presented).

overnight or "red eye" flight from San Diego to Washington-Dulles International Airport.  While

waiting to board Flight 77, Jennings struck up a conversation with the victim, Casey, and her

brother, Ryan.[2]  At the time of the flight, Casey and Ryan had attained the ages of 13 and 11,

respectively.[3]  After the three boarded Flight 77, Casey and Ryan sat in their assigned seats, while

Jennings chose to sit next to Casey rather than in his distant, assigned seat.

      Casey testified that shortly after she had taken her seat, Jennings sat down next to her.

When Casey asked Jennings if he was sitting in his assigned seat, Jennings responded that his

assigned seat was ten rows back, but that he wanted to sit next to Casey because he "thought she

was beautiful."  When Casey asked Jennings how old he was, he replied that he was 21, although

he was actually 24 years old.  Casey then asked Jennings if he would like to know how old she

was.  Jennings declined, adding, according to Casey, "that in his mind, she was 18, and that he

wanted to make it right."  Approximately five or ten minutes into the flight, Jennings initiated a

discussion about a friend of his who had been charged of statutory rape.  These charges, Jennings

told Casey, were "really wrong ... because if two people want to be together, then they should,

regardless of age."  During this conversation, Jennings began to caress the middle part of Casey's

thigh.  Approximately thirty minutes to an hour into the flight, Casey noticed that Jennings had

brought a bottle of wine onto the plane.  Also about this time, Casey got up to go to the

bathroom.  Casey testified that as she slid past Jennings towards the aisle, Jennings fondled her

buttocks and vagina through her clothing.

---

[2] To protect their privacy, Casey and her brother were identified at trial only by their first
names.

[3] Casey, at that time, was within days of her fourteenth birthday.

When Casey returned from the bathroom, she noticed that Jennings had raised the arm rest so that there was no barrier between his seat and hers.  After Jennings told Casey that he was cold, Casey offered him her baby blanket.  Jennings used the blanket to cover himself, and he also attempted to cover Casey's legs.  Casey tried to resist Jennings' attempt to cover her legs with the blanket, telling him that she was hot.  Jennings ignored Casey's protests, covered her legs, and began to caress her inner thigh.  Thereafter, Jennings leaned in and kissed Casey's right cheek, spilling wine on Casey's baby blanket in the process.  Jennings then began to curse, grabbed the blanket, and ran to the lavatory to wash the wine off the blanket.  When Jennings returned, Casey asked for her blanket back because she did not want Jennings to spill wine on it again or to use it again.  Jennings then returned the blanket to Casey and again began to caress Casey's thigh.  Casey tried to cross her legs to evade Jennings' touchings, but Jennings hooked his hand through her crossed legs.  With his hand wedged between her thighs, Jennings began to caress her upper thighs and buttocks.  This lasted for about 15 minutes.  Casey began to feign being asleep, hoping Jennings would then leave her alone.  Her plan worked, as Jennings eventually moved one row up to sit with Ryan, Casey's brother, and another passenger, Karen Schmidt.

Jennings then struck up a conversation with Schmidt, and they talked for approximately thirty minutes.  Schmidt testified that when Jennings sat in the seat adjacent to her, he was drinking from a plastic red cup and that he "reeked" of alcohol.  When Schmidt saw Jennings' bottle of wine, she asked him how he had managed to get a full-sized bottle of wine on board the plane.  Jennings replied that "you got to do what you got to do."[4]

---

[4] Schmidt admitted accepting a sip of Jennings' wine.

According to Schmidt, Jennings repeatedly discussed his interest in Casey during their conversation, stating on several occasions that Casey was "so hot," that Jennings wished he were still sitting beside Casey "so that she could have her head in [his] lap", and that he wanted to join the "Mile High Club" with Casey.  When Schmidt inquired of Jennings how old Casey was, he responded "I don't even want to know how old she is ... and I told her I didn't want to know how old she is."  Jennings confessed, however, that he thought Casey was 13 or 14.[5]  When Schmidt asked Jennings how old he was, he replied, "To you, I'm 28.  But to her, I'm 21."[6]  Schmidt said to Jennings, "I'm sure this isn't the first time you've done this," to which, according to Schmidt, Jennings confessed, "No, it's not," noting that he had "always had a thing for young girls."  Jennings noted that, for the first time, he was in a relationship with a woman his own age, but that it was "very cool" since both of them "would bring home girls and they would all three have sex."[7]

Jennings' conversation with Schmidt ended abruptly when Jennings spilled wine on her seat and on a nearby passenger.  Jennings rushed to the bathroom to grab paper towels to clean up the spilled wine.  After cleaning up the spilled wine, Jennings returned to his seat next to Casey.  Shortly thereafter, Schmidt testified that she alerted a flight attendant to Jennings' behavior with respect to Casey, and the flight attendant then moved Jennings away from Casey to

---

[5] Casey's testimony corroborated Schmidt's in this regard, as Casey testified that she overheard Schmidt tell Jennings that Casey was "13 or 14," to which Jennings responded, "It doesn't matter."

[6] The record does not reflect why Jennings overstated his age to Schmidt.

[7] It is worth noting that the jury had the benefit of defense counsel's vigorous cross examination of all prosecution witnesses, including Casey and Schmidt.

the rear of the plane.  Thereafter, Jennings had no further contact with Casey during the flight.

On arrival in Virginia, Jennings was arrested and subsequently charged in a single count indictment with abusive sexual contact with a minor in violation of 18 U.S.C. § 2244(a)(3).  A two day trial on this indictment ended with a jury verdict of guilty.  Seven days later, on April 20, 2006, defendant, by counsel, filed a motion for a new trial on the ground that a particular jury instruction was contrary to law.  Because the instant motion's focus is that instruction, it is worth recounting briefly its genesis.

The parties were afforded opportunities pre-trial and during the trial to submit proposed instructions and both did so.  Based in part on these submissions, the Court prepared and submitted to counsel a compete package of jury instructions that included the following jury charge derived, as the parties were told, from § 2243(c) and (d):

> I instruct you that it is not necessary that the government prove that the defendant knew Casey had reached the age of 12, but had not yet reached the age of 16, or that the defendant knew that Casey was at least four years younger than the defendant.

> Now, in a prosecution such as this for sexual contact with a minor, it is a defense, which the defendant must establish by a preponderance of the evidence, that the defendant reasonably believed that the other person had attained the age of 16 years.

Neither party objected to this instruction; indeed, defendant's counsel specifically and repeatedly agreed that this charge accurately stated the law governing a violation of § 2244(a)(3).[8]

---

[8] The following colloquy between the Court and defense counsel during the instructions conference is illustrative of this:

> **Defendant's Counsel**: ...[Y]our Honor, I wanted to clarify one point to make sure we are all on the same page.  Because [the prosecutor] and I had different affirmative defense instruction [sic], we agree with the Court's affirmative defense instruction.

Defendant now takes a different view, arguing that the instruction misstates the law and

impermissibly shifts the burden to the defendant, thereby warranting the grant of a new trial.

Defendant's argument, distilled to its essence, is that because § 2244(a)(3) explicitly incorporates

only "subsection (a) of section 2243" and not also subsections (c) and (d),[9] and because the

offense of abusive "Sexual Contact" with a minor must be "knowingly" committed, no

---

> ...
>
> **Defendant's Counsel**: The affirmative defense doesn't have to do with an act.  It
> has to do with knowledge of age. ...The affirmative defense has only to do with
> what is ... in Mr. Jennings' head.
>
> ...
>
> **The Court**: [The instruction based on §§ 2243(c)-(d)] is certainly correct on the
> law, isn't it?
>
> **Defendant's Counsel**: Yes.

[9] Section 2244(a) provides that:

(a) Sexual conduct in circumstances where sexual acts are punished by this
chapter.--Whoever, in the special maritime and territorial jurisdiction of the
United States or in a Federal prison, or in any prison, institution, or facility in
which persons are held in custody by direction of or pursuant to a contract or
agreement with the Attorney General knowingly engages in or causes sexual
contact with or by another person, if so to do would violate--

(1) section 2241 of this title had the sexual contact been a sexual act, shall be
fined under this title, imprisoned not more than ten years, or both;

(2) section 2242 of this title had the sexual contact been a sexual act, shall be
fined under this title, imprisoned not more than three years, or both;

(3) subsection (a) of section 2243 of this title had the sexual contact been a sexual
act, shall be fined under this title, imprisoned not more than two years, or both; or

(4) subsection (b) of section 2243 of this title had the sexual contact been a sexual
act, shall be fined under this title, imprisoned not more than two years, or both.

affirmative defense is applicable and the government is therefore required to prove beyond a reasonable doubt that defendant knew Casey was not yet 16 and that he was more than four years older than she.  For its part, the government argues that this is a misreading of the statute that is inconsistent with the history of the subsections and would lead to anomalous results.

The question presented, then, is whether § 2244(a)(3), by explicitly incorporating "subsection (a) of section 2243," also effectively incorporates subsections (c) and (d) of that section.  Put another way, the question is whether the government must prove beyond a reasonable doubt as an element of abusive "Sexual Contact" of a child that defendant knew the victim had not attained the age of 16 and was at least four years younger than defendant.

## II.

Pursuant to Rule 33, Fed. R. Crim. P., a new trial may be granted "if the interest of justice so requires."  Given that defendant did not object at trial to the instruction he now attacks, and indeed, explicitly agreed to it, the threshold question is whether the motion fails for this reason alone.  More precisely, the question is whether the failure to register a timely objection precludes defendant's motion from qualifying as being in "the interest of justice."[10]

There is ample authority that "the interest of justice" standard is met where a new trial motion is based on the use of perjured testimony, nondisclosure of exculpatory material

---

[10] Because petitioner's motion is a request for a new trial, the proper standard of review is Rule 33's "interest of justice" standard, not the plain error standard that applies at the appellate stage.  *See United States v. Olano*, 507 U.S. 725, 732 (1993) (articulating standard for appellate review for trial court error where moving party failed to object); *United States v. Uzenski*, 434 F.3d 690, 708 (4th Cir. 2006) (same).

evidence, or exertion of improper influence on the jury.[11]  Yet, there appears to be no authority,

in this circuit or elsewhere, squarely addressing whether a failure to object to a jury instruction at

trial on the ground that the jury instruction wrongly states the law renders a defendant ineligible

to move for a new trial on this ground.  Notwithstanding the absence of such authority, the

meaning of the phrase in "the interest of justice" in the context of Rule 33 is not difficult to

discern; the phrase's plain meaning makes unmistakably clear that granting a new trial is

discretionary,[12] and the cases reflect that this discretion should be exercised where it is

demonstrated that the fundamental fairness or integrity of the trial result is substantially in

doubt.[13]  The plain meaning of "the interest of justice" would require no less.  There is also

authority construing Rule 33 confirming that new trials should be granted sparingly.  *See United*

*States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985) (discussing trial court's discretion to

grant new trial in context of post-verdict challenge to sufficiency of the evidence); *United States*

*v. Leach*, 427 F.2d 1107, 1111 (1st Cir. 1970) (same).  Although stated in the context of a

challenge to the sufficiency of the evidence, this is a sensible caution more generally because a

---

[11]  *See generally* 3 Wright & Miller FEDERAL PRACTICE AND PROCEDURE §§ 553-556 (discussing new trial motions in variety of contexts); *compare U.S. v. Gonzalez-Gonzalez*, 258 F.3d 16, 20 (1st Cir. 2001) (in Rule 33 motion based on newly discovered evidence, interest of justice requires new trial only if, *inter alia*, such evidence would probably lead to acquittal) *with U.S. v. Bruscino*, 662 F.2d 450 (7th Cir. 1981) (in new trial motion based on jury's consideration of extraneous evidence, interest of justice requires new trial if reasonable possibility exists that jury was prejudiced as a result).

[12]  *See* Rule 33, Fed. R. Crim. P. (noting that "the court *may* vacate any judgment and grant a new trial if the interest of justice so requires") (emphasis added); *see also United States v. Morris*, 781 F.Supp. 428, 433 (E.D. Va. 1991) (*rev'd* on other grounds by *United States v. Morris*, 988 F.2d 1335 (4th Cir. 1993)).

[13]  *See* cases cited in *supra*, note 11.

contrary result would create a perverse incentive: A party seeing error would be free to sit silently, hoping to prevail in spite of the error, but nonetheless confident that if he does not prevail he can still obtain a new trial based on the error. Yet, there is also a strong interest in ensuring that convictions are not allowed to stand if infected by, or based on, an incorrect application of the governing law.

Importantly, there is no reason to believe that defense counsel in this case engaged in this behavior. Rather, it is clear counsel simply inadvertently failed to assert a contemporaneous objection, and then on realizing their omission post-trial, promptly asserted the objection. Given that defense counsel here did not deliberately refrain from objecting contemporaneously, the "interest of justice" standard requires consideration of defendant's ground for a new trial notwithstanding counsel's failure to assert a timely trial objection because, if defendant is correct that the jury was wrongly instructed, the fairness and integrity of the jury's verdict is substantially undermined.

## III.

It is axiomatic that the task of statutory construction begins with the statute's language and ends there if the plain meaning of the statute is dispositive of the question presented. *See, e.g.*, *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (noting that the judicial inquiry "begins with the statutory text, and ends there as well if the text is unambiguous"). This is not such a case. The language of § 2244(a)(3) is not dispositive; its plain meaning does not answer the question whether in defining the offense of abusive "Sexual Contact" of a minor by reference to "subsection (a) of Section 2243," which defines "Sexual Acts" with a minor, Congress intended to incorporate by reference just the language of § 2243(a) or the entirety of

§2243, including the defenses and state of mind proof requirements found in subsections (c) and (d) of § 2243, respectively.[14]  On this question, the statute is ambiguous, and hence the interpretive task must continue.  The task must be guided and informed by the statute's purpose and the result be consistent with that purpose.[15]  Given this, the analysis here requires an overview of the statutory scheme of which § 2244(a)(3) is a part so that this provision's ambiguity can be resolved consistent with the purpose and role of the provisions in the context of the overall statutory scheme.

The statutory provisions in issue here, § 2244(a)(3) and § 2243, are found in Chapter

---

[14]  Section 2243(c) provides affirmative defenses to prosecutions under § 2243(a), and states in pertinent part that:

> In a prosecution under subsection (a) of this section, it is a defense, which the defendant must establish by a preponderance of the evidence...
>
> (1) that the defendant reasonably believed that the other person had attained the age of 16 years
>
> (2) that the persons engaging in the sexual act were at that time married to each other.

Section 2243(d) relieves the government of proving that the defendant knew that the victim was underage, and states in pertinent part that:

> In a prosecution under subsection (a) of this section, the Government need not prove that the defendant knew—
>
> (1) the age of the other person engaging in the sexual act; or
>
> (2) that the requisite age difference existed between the persons so engaging.

[15]  *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608 (1979) (noting that the judicial task is to interpret the words of the statute "in light of the purposes Congress sought to serve"); *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 118 (1983) (same).

109A of Title 18.  That Chapter consists of eight separate sections that define and criminalize

various forms of "sexual abuse" committed within the special maritime or territorial jurisdiction

of the federal courts.  Sexual abuse is divided into two categories: Collectively, §§ 2241-2243

prohibit abusive "Sexual Acts," while § 2244 bars abusive "Sexual Contact."  As defined in

Chapter 109A, abusive Sexual Acts, the more serious category of offense conduct, includes rape,

sodomy, digital and penile penetration and direct touching (i.e., not through clothing) of the

victim's private parts.[16]  By contrast, abusive Sexual Contact refers to less serious forms of

sexual abuse, namely the touching of the victim's private parts through clothing.[17]

Chapter 109A further subdivides abusive Sexual Acts into three distinct offense

categories, specifying for each the elements the government must prove, and where applicable,

---

[16] Section 2246 defines "Sexual Act" as:

(A) contact between the penis and the vulva or the penis and the anus, and for
purposes of this subparagraph contact involving the penis occurs upon
penetration, however, slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the
mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a
hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade,
or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another
person who has not attained the age of 16 years with an intent to abuse, humiliate,
harass, degrade, or arouse or gratify the sexual desire of any person.

[17] Section 2246 defines "Sexual Contact" as:

[T]he intentional touching, either directly or through the clothing, of the genitalia, anus,
groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate,
harass, degrade, or arouse or gratify the sexual desire of any person.

prescribing available affirmative defenses.  In general, §§ 2241-2242 criminalize abusive Sexual

Acts committed by threat or force,[18] while § 2243 prohibits abusive Sexual Acts unaccompanied

by any threat or force, but which are nonetheless proscribed because of the victim's status as a

ward or as a minor between the ages of 12 and 16.  No affirmative defenses exist to an abusive

Sexual Act prosecuted under §§ 2241-2242 because the government bears the burden of proving

that the Sexual Act in issue was not consensual, either (i) because it was consummated by force

or threat or (ii) because the victim was incapable of consenting to the act.[19]  In other words,

affirmative defenses are inappropriate with respect to conduct forbidden by §§ 2241-2242,

because under these sections the government must prove beyond a reasonable doubt the

occurrence of sexual abuse to which, by definition, there could be no affirmative defense.

By contrast, § 2243 criminalizes Sexual Acts that are somewhat less serious because they

do not involve either the use of threats or force, or very young children.  Specifically, § 2243(a)

forbids abusive Sexual Acts where the perpetrator did not threaten the victim, and where the

victim is between the ages of 12 and 16 and the victim is at least four years younger than the

accused.  Importantly, Congress also specified that in these circumstances, the government is not

required to prove that the accused knew the victim's age or the age difference.[20]  Given (i) that

---

[18] Section 2241 governs abusive Sexual Acts accomplished by, *inter alia*, threat of death, serious bodily injury, or kidnapping, while § 2242 governs abusive Sexual Acts accomplished by all other less severe threats.

[19] These sections adopt a broad definition of incapacity, and include both mental and physical infirmities.  S*ee* § 2241(c) (criminalizing Sexual Acts unaccompanied by any threat against children under the age of 12); *see also* § 2241(b) and § 2242(2) (both prohibiting commission of Sexual Acts on persons incapable of appraising or controlling conduct).

[20] *See* § 2243(c)-(d).

these victims are slightly older; and (ii) that the government need not demonstrate behavior manifestly inconsistent with consent (i.e., force or threat of harm) as an element of the offense, Congress, for this category of Sexual Acts, provided a mistake of age affirmative defense.  A defendant charged under § 2243(a) may escape liability for conduct that would otherwise violate the statute if the defendant can demonstrate by a preponderance of the evidence that a defendant made a reasonable mistake of age.  For example, a 20 year-old defendant could escape liability for abusive Sexual Acts with a 15 year-old if he reasonably believed that the victim was 16.  In this regard, however, Congress made clear that the defendant bears the burden of proving that he made a reasonable mistake of age, and the government need not prove the absence of same.[21]

As noted, § 2244 prohibits Sexual Contact, a generally less serious category of offenses than Sexual Acts.  For this less serious category of sexual abuse, Congress plainly intended to cover the same ground for Sexual Contacts it had already covered for Sexual Acts.  For example, it is clear that Congress, through § 2244(a)(1) intended to prohibit the use of force or deadly threats to accomplish a Sexual Contact, just as it prohibited the same conduct to accomplish a Sexual Act in § 2241.  And, because a Sexual Contact offense is less serious than a Sexual Act offense, the maximum punishment is less severe, namely a ten year maximum for Sexual Contact as opposed to a maximum of life for a Sexual Act in the same circumstances.  Similarly,

---

[21]  Section 2243(d) states in pertinent part that:

In a prosecution under subsection (a) of this section, the Government need not prove that the defendant knew—

(1) the age of the other person engaging in the sexual act; or

(2) that the requisite age difference existed between the persons so engaging.

Congress plainly intended, as reflected in § 2244(a)(3) to criminalize Sexual Contacts with children 12-16 years old in the same way it criminalized Sexual Acts with such children. Again, the different maximum prison terms—fifteen years for Sexual Acts versus two years for Sexual Contacts—reflect the difference in the seriousness of the conduct and likely hurtful effects on the victim. It is apparent, therefore, that Congress intended § 2244(a)(3) to play the same role with respect to Sexual Contacts that § 2243(a) plays with respect to Sexual Acts.

From this overview of the entire statutory scheme criminalizing various types of sexual abuse, it is clear that Congress carefully crafted a scheme criminalizing Sexual Acts, including in appropriate circumstances, affirmative defenses and state of mind requirements. And, it is equally clear that Congress deliberately chose not to devise or invent an entirely new scheme for Sexual Contacts, electing instead to adopt and incorporate by reference the same scheme it had crafted for Sexual Acts. Thus, had Congress intended to alter either the range of conduct covered or the proof scheme applicable to sexual abuse of a minor (12 to 16 years old) or a ward where the abuse was a Sexual Contact rather than a Sexual Act, then certainly it would have explicitly crafted a new scheme to govern Sexual Contacts. Yet, Congress deliberately chose not to do so; instead, it incorporated by reference in § 2244 the scheme governing Sexual Acts, thus making it applicable to Sexual Contact offenses. Given this as the purpose and role of § 2244(a)(3), it follows that the reference in that subsection to "subsection (a) of Section 2243" is intended to incorporate not just the language of § 2243(a), but rather the entire offense defined in § 2243(a), including the affirmative defense and state of mind requirements set forth in subsections (c) and (d), respectively.

The legislative history further confirms that Congress never intended to require the

-14-

government to prove the defendant's state of mind for offenses governed by Chapter 109A.  To

the contrary, Chapter 109A makes pellucidly clear that Congress intended to focus only on the

defendant's conduct and explicitly rejected state of mind inquiries as immaterial to the offense

conduct criminalized by this Chapter.  *See* H.R. Rep. 99-594, *10-11 (1986) (noting that one of

Congress' purposes in enacting Chapter 109A was to ensure "that the focus of the trial is upon

the conduct of the defendant, instead of upon the conduct or state of mind of the victim").  As the

legislative history makes clear, Congress clearly knew how to distinguish between conduct-

focused inquiries and state of mind-focused inquiries; thus, by choosing to emphasize only the

defendant's **conduct**, it necessarily stands to reason that insofar as the government's *prima facie*

case under Chapter 109A is concerned, Congress intended to render the defendant's state of mind

immaterial.[22]  To be sure, the defendant may, in certain cases, offer evidence of his state of mind

to show that he made a reasonable mistake of age; however, such evidence is—consistent with

the jury instruction given in this case—relevant only to an affirmative defense for which the

defendant bears the burden of proof, not to the government's *prima facie* case.

Why then, it is reasonable to ask, does § 2244(a)(3) refer to "subsection (a) of Section

2243" rather than simply to "Section 2243," in contrast to § 2244(a)(1) and (a)(2), which refer to

"Section 2241" and "Section 2242," respectively.  The short answer to this is that Congress'

reference to "subsection (a)" is a mere artifact of history, not, as defendant would have it, a clear

---

[22] *See* AMJUR STATUTES § 130 (canon of statutory interpretation *expresio unius est exclusio alterius* holds that an explicit expression of particular matters implies exclusion of others); *Michigan Citizens for an Independent Press v. Thornburgh*, 868 F.2d 1285, 1293 (D.C. Cir. 1989) ("[I]f Congress banned the importation of apples, oranges, and bananas from a particular country, the canon of *expresio unius est exclusio alterius* might well indicate that Congress did not intend to ban the importation of grapefruits.").

sign that Congress intended to alter radically the proof scheme applicable to the sexually abusive

touching of a 12-16 year-old child when that touching is a Sexual Contact rather than a Sexual

Act. When Chapter 109A was originally enacted in 1986, Congress in § 2244 found it necessary

to refer to specific subsections of § 2243 because different punishments were prescribed for (i)

abusive Sexual Contacts with 12-16 year-old children (2 years) and (ii) abusive Sexual Contacts

with wards (6 months).[23] When the punishments for these offenses were made the same (2 years)

in 2006, the subsection references were left unchanged. This, at most, was an oversight.[24] By no

means does Congress' failure to eliminate the reference to "subsection (a)" in 2006 justify the

conclusion that Congress intended to make the proof scheme for abusive Sexual Contacts with a

12-16 year-old child or a ward radically different from that applicable to Sexual Acts with the

same victims. This is so because it is unlikely that, by failing to change "subsection (a) of

Section 2243" to "Section 2243", Congress intended to effect, *sub silencio*, such a radical change

in the proof scheme for abusive Sexual Contacts.[25]

---

[23] No such distinction was ever required for § 2244(a)(1) or § 2244(a)(2): Congress
provided a uniform maximum penalty for violating § 2241 and § 2242, the sections of Chapter
109A which § 2244(a)(1) and § 2244(a)(2) reference, respectively.

[24] Further evidence that failing to eliminate the "subsection" references was inadvertent
is that Congress overlooked that there was no longer any need to distinguish in § 2244 between §
2243(a) and (b); the punishments being the same, §2244(a)(3) and (a)(4) could have been
combined and replaced with a single reference to § 2243.

[25] Congress' purpose in amending § 2244 was to provide "[i]ncreased penalties for sexual
abuse" offenses. *See* Pub.L. 109-162, Title XI, § 1177(a)(5), (b)(2), Jan. 5, 2006, 119 Stat. 3125
(stating that Congress' purpose in amending § 2244 was to provide "[i]ncreased penalties for
sexual abuse" offenses). There is no reason to believe that by providing for more serious
sentences for sexual offenses in 2006 that Congress intended to make it more difficult to prove
Sexual Contacts than to prove Sexual Acts. Indeed, requiring the government to prove beyond a
reasonable doubt that the defendant knew that the victim had not reached the age of 16, as a
practical matter, would impose on the government in most cases a difficult, if not impossible

Further and compelling support for this conclusion is apparent from examining the anomalous, indeed absurd, results of accepting the opposite conclusion, as defendant here urges. In that event, it would be easier for the government to prove the more serious Sexual Act offense of abusive touching (not through clothing) of a 12-16 year-old child than the corresponding less serious Sexual Contact offense.  For the former, the government, by virtue of § 2243(d), does not have to prove that the accused knew the victim's age or that the requisite age difference existed between them, whereas for the latter, less serious offense, as defendant would have it, the government must prove the accused had such knowledge.  Also anomalous is that, as defendant would have it, for the more serious Sexual Act touching, the accused would have an affirmative mistake of age defense, whereas no such defense would exist for the less serious Sexual Contact touching offense.  The anomaly of imposing a heavier burden on the government to prove a less serious offense finds no warrant in either the language or the legislative history of Chapter 109A.

Yet another absurd result of defendant's construction of § 2244(a)(3) occurs in circumstances that, while perhaps rare, nevertheless may occur.  As defendant would have it, § 2244(a)(3) does not incorporate § 2243(c), and hence a defendant accused of abusive Sexual Contact under § 2244(a)(3) could not escape liability even by showing that the putative victim was his wife.[26]  By contrast, a defendant accused of an abusive Sexual Act under §

---

burden.  It would be ironic if by passing a law the nominal purpose of which was to provide more severe sentences for sex offenders, Congress had actually made it virtually impossible to win convictions for abusive Sexual Contacts.

[26] Of course, to come within the purview of § 2244(a)(3), the wife would have to be 12-16 years old, and her husband would have to be at least four years older.  While it is unlikely that many married couples meet these criteria, some may.  For instance, had Chapter 109A been in effect at the time of his marriage to his then-13 year-old cousin, a then-22 year-old Jerry Lee Lewis could, at least theoretically, have been prosecuted for touching his wife's thigh through

2243—undoubtedly more serious sexual misconduct—would be able to escape liability under that section by showing, for example, that the putative victim was his wife.  In sum, then, a man accused of rubbing a woman's inner thigh through clothing could not escape potential liability under § 2244(a)(3) by demonstrating that the putative victim was his wife, while he would be able to escape liability for the more serious Sexual Acts, i.e., sexual intercourse.  To avoid these absurd results that follow from defendant's reading of § 2244(a)(3), it is necessary to construe that provision as incorporating all of § 2243, including subsections (c) and (d).  *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 200 (1993) (statutes must be construed to avoid absurd results).

While no case has been found discussing the precise question presented here, one unpublished district court opinion listed the elements the government must prove in a prosecution under § 2244(a)(3), suggesting (albeit only inferentially) that the government need not prove that the defendant had knowledge of the victim's age.  In that opinion the court did not include defendant's knowledge of the victim's age as an element the government was required to prove under § 2244(a)(3).  *See United States v. Dean*, 2001 WL 184241 (D. Me. 2001) ("Engaging in a sexual contact with someone under the age of sixteen constitutes an abusive sexual contact under 18 U.S.C. § 2244(a)(3).").  Thus, the sole case listing the elements of § 2244(a)(3) rejects the statutory interpretation defendant urges and supports the result reached here that § 2244(a)(3) incorporates all of § 2243, and thus the jury instruction given in this case based on § 2243(c) and § 2243(d) was appropriate.

---

clothing.  Under defendant's proffered interpretation of § 2244(a)(3), the parties' marital status would have afforded Lewis no defense to liability for abusive Sexual Contact.

Jennings makes a further argument that Congress' use of the word "knowingly" in § 2244 demonstrates that Congress intended that the government must prove as an element of the crime that the defendant knew that the victim had not attained the age of 16.  In support, defendant cites *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) (interpreting child pornography statute to require the government to prove that defendants knew that victims of child pornography were underage).  This argument fails textually and legally.  It is settled that a statute must be given its most grammatical reading unless there is a compelling reason to depart from that interpretation.  *See United States v. Cook*, 76 F.3d 596, 600 (4th Cir. 1996) (suggesting rebuttable presumption exists in favor of construing statute in most grammatically correct manner).  In this case, the most grammatical reading of 18 U.S.C. § 2244 is that "knowingly" modifies "Sexual Contact"—nothing more.  Given this and given the absence of a reason sufficient to reject this interpretation, the government must prove that the defendant intended to engage in conduct prohibited by § 2244; it does not in any way suggest that the government must also prove that the defendant knew that the victim of the Sexual Contact had not attained the age of 16.[27]  Nor is *X-Citement Video* helpful to defendant; to the contrary, it helps illuminate the

---

[27] Nor is the Supreme Court's recent decision in *Dixon v. United States*, No. 05-7053 (June 22, 2006) to the contrary.  In that case, the question presented was whether the government was required to prove that the defendant was not under duress in order to win a conviction for making a false statement in connection with the acquisition of a firearm in violation of 18 U.S.C. 922(a)(6).  The Supreme Court rejected Dixon's argument that the government must prove absence of duress to satisfy the statute's requirement that the defendant acted "knowingly," holding instead that "knowingly" in that context "merely requires proof of knowledge of the facts that constitute the offense."  *See* 548 U.S. at — (2006).  Accordingly, the Supreme Court ruled that the district court appropriately instructed the jury that duress was an affirmative defense for which the defendant bore the burden of proof.  If anything, then, *Dixon* supports the result reached here.

flaw in defendant's argument.  There, the Supreme Court acknowledged that it was departing from the most grammatically sound interpretation of the statute in issue only because construing the statute in that manner would lead to absurd results.  *See X-Citement Video, Inc.*, 513 U.S. at 68-72.  In this case, construing § 2244(a)(3) in its most logical manner does not lead to an absurd result; therefore, there is no reason to reject the most logical interpretation of the word "knowingly" in § 2244.  Indeed, as discussed previously, construing the statute as defendant urges would cause—not avoid—absurd results.  Moreover, by focusing on the defendant's state of mind, Jennings' proffered interpretation of "knowingly" directly contradicts one of Congress' stated purposes in passing Chapter 109A.  *See* H.R. Rep. 99-594, *10-11 (1986) (purpose of Chapter 109A is to refocus inquiry on defendant's ***conduct***) (emphasis added).  For all of these reasons, Jennings' argument is unpersuasive that Congress' use of the word "knowingly" in § 2244 requires the government to prove that the defendant knew that the victim had not attained the age of 16.

Because defendant's proposed interpretation of § 2244(a)(3) would lead to anomalous results and is inconsistent with the statute's purpose, role, and history, it must be rejected.  Additionally, settled principles of statutory construction compel the conclusion that the word "knowingly" in § 2244 modifies only the offense conduct itself, and does not require the government to prove as an element of the offense that the defendant did not make a reasonable mistake of age.  For these reasons, § 2244(a)(3) must be interpreted to incorporate all of § 2243, not merely § 2243(a).  Accordingly, the instruction given to the jury based on § 2243(c)-(d) was proper, and "the interest of justice" does not require that defendant be granted a new trial.

An appropriate Order will issue.

_____/s/_____

Alexandria, Virginia                    T. S. Ellis, III
July 11, 2006                           United States District Judge